*J. R. Williams,* for plaintiff in error.
*F. A. Hooper, solicitor-general,* contra.

------

## HOWARD *v.* THE STATE.

1. When in response to a motion made by an attorney representing a person charged with crime, for a postponement of his trial in order to obtain the services of another attorney who had been spoken to in behalf of the accused but not actually employed, the judge, while holding that the motion on the facts appearing was not well founded, in fact postponed the trial till the next morning for the purpose of giving the accused an opportunity to procure additional counsel, and his attorney present acquiesced in this, expressed satis-

faction therewith, and went to a trial on the following day without asking for further time : *Held*, that a ground of a motion for a new trial based on these facts was without merit.

2. The overruling of a motion submitted during the progress of a trial, whether so doing be erroneous or not, affords no just cause for complaint to the party making such motion, when, subsequently to the action of the court thereon, his counsel formally withdraws the motion and at the same time states to the court that it was made without proper information as to the facts on which it was based.  Such a withdrawal necessarily relates back to the time when the motion was presented, and implies acquiescence in the disposition which has been made of the same.

3. There was no evidence either for the State or the accused which authorized any instructions to the jury in reference to the law either of voluntary or involuntary manslaughter.

4. When in a trial for crime the accused through his counsel requests the court in writing to give in charge to the jury a stated proposition as a rule of law applicable to the case under the evidence, and this request is complied with, the accused can not thereafter justly complain that the charge requested and given was erroneous.

5. The evidence sustained the verdict ; and as no error of law to which the plaintiff in error can properly except has been committed by the trial judge, no cause for a new trial appears.

Argued April 21, — Decided April 26, 1902.

Indictment for murder.  Before Judge Felton.  Bibb superior court.  February 21, 1902.

*M. G. Bayne*, for plaintiff in error.

*Boykin Wright*, attorney-general, *William Brunson*, solicitor-general, and *John R. Cooper*, contra.

LITTLE, J.  E. G. Howard was indicted by the grand jury of Bibb county for the murder of Henry Hammond.  He was tried and convicted.  He submitted a motion for a new trial, which was overruled, and he assigned as error certain rulings made by the trial judge, as well as the judgment overruling the motion for a new trial.  The evidence is lengthy, and its recapitulation here is unnecessary.  It is sufficient to say that it was claimed on the part of the State, and the preponderance of the evidence introduced on the trial tended to show, that the accused was drinking or drunk, and visited the dance-hall maintained by the deceased in the city of Macon, on the night of December 25, 1901; that there was a large company present; that the accused conducted himself in an improper manner, and was directed to leave the premises by the deceased; that he was armed with a pistol, and in leaving the hall fired it several times in an anteroom or passageway; that subse-

quently he went into an alleyway adjacent to the premises, and, as the deceased was walking up the alleyway to secure the presence of an officer, he was accosted by the accused, who, on ascertaining the purpose of the deceased, fired on him and inflicted a mortal wound; that after he was shot the deceased returned the fire; and that the accused fled the State. On the other hand the accused contended, and introduced evidence tending to show, that when the two had reached the alleyway, the deceased cursed the accused and fired on him, and that the accused shot the deceased in defense of his person, and to prevent the deceased from shooting and committing a felony upon him.

1. It is complained in the motion for a new trial that the court erred in not granting to movant a postponement of the trial of his case until he could employ counsel to represent him; and it is alleged in this ground that the movant relied on the services of Mr. Estes, who had agreed "to assist in the trial of his case." It appears that on the day set for the trial, and in the afternoon of that day, the judge received two letters from Mr. Estes, one rendering it doubtful as to whether he would render services for the movant in the trial of his case, and the other notifying the judge that he would not be able to represent the defendant before Monday thereafter. It is alleged that at that time the accused had no counsel except a young colored lawyer, Sellers, and it is stated in this ground that Sellers was without any experience in the trial of such cases, and was not acquainted with the jury sufficiently to have any information as to whom to select as jurors, and was not properly qualified to represent movant in the trial of the case. To support this ground the movant offered, at the hearing, an affidavit of Sellers, in which it was stated that affiant was sole counsel of Howard at his trial; that he was an inexperienced young attorney; that he was not qualified to manage the case, not having been engaged in such a case before; that he did not know the members of the jury, and was not capable to properly select a jury; that he employed Mr. Estes for his client, and relied upon him to represent the defendant with him, etc. The trial judge certifies this ground of the motion with an explanatory note to the effect that the indictment was returned on January 8, and the case was called for a trial on January 14. At the time the indictment was returned, Sellers, who was a member of the bar, stated to the judge that he represented the defendant,

and that he expected Mr. Estes to assist him in the trial and defense of the accused.   When the case was called, a motion for a continuance was made on the ground of the absence of Mr. Estes. The evidence with reference to the employment of Mr. Estes was given by Howard, the father of the defendant, by whom the employment of Mr. Estes was said to have been made.   He stated that he had spoken to Mr. Estes, but did not remember what he said, but that he thought that Sellers and Estes were the attorneys who were to represent his son; that he had never paid Estes anything, and had no contract of employment with him.   The accused testified, on the motion for a continuance, that he could not safely go to trial without the presence of Mr. Estes ; that he did not know whether any contract of employment had been made with him or not, as he had been continuously in jail, etc.  Sellers testified, that he had been employed to defend the case by the father of the accused, who requested him to associate some other lawyer with him ; that he suggested Estes, and subsequently spoke to him about it, told him the amount of the fee which the father was to pay, and Mr. Estes agreed to go into the case, but had been absent from the city until that day ; that he depended on Mr. Estes as associate counsel, that is to say, expected him.   After hearing and considering this showing, the judge ruled that it was not a good one as a matter of law, but he would postpone the trial until the next morning, so as to allow the parties an opportunity to secure the services of Mr. Estes or arrange with some other lawyer to assist.   On this announcement Sellers as counsel for the accused said: " We will proceed in the morning any way if he is not here," and on inquiry of Sellers, the attorney, if that postponement was satisfactory, he answered that it was perfectly so.   On the next morning no further motion for postponement was made, and the trial proceeded.

It is very apparent that there is no merit in the ground which we are now considering.   It may be that Sellers was a young and inexperienced lawyer, and unable properly to manage a case of the gravity and importance of that which confronted the accused. But that was a matter for the accused and his friends to consider. This court can not, in justice to the public, undertake to discriminate between the professional attainments of different attorneys in the management and conduct even of grave and momentous cases. At one time in the history of the jurisprudence of England, the

home of the common law, persons charged with felony were not allowed the benefit of counsel. While, happily for the protection of human life and liberty, this practice is a relic of the past, and the fundamental law now guarantees to a person accused of crime the benefit of counsel, when the accused is represented by counsel of his own selection whom he has regularly employed, this guarantee has been fulfilled. And when the accused exercises this right of selection, the courts will not attempt either to qualify that right or, after conviction, grant him a new trial if the selection has proved to be an unwise one. The most that we can do is to closely scan the proceedings which occurred during the trial and, under established rules, correct any error which was committed. An appeal for a new trial on the ground of inefficiency of counsel must be addressed to the trial court, which is invested with large power and great discretion in this regard. We are invested with none. So far as this record shows, Mr. Estes had never been employed. At best, he was spoken to to act as associate counsel in the case. The court apparently gave sufficient time to secure the employment of Mr. Estes or other additional counsel. Had such been done and a motion submitted to further postpone the case to make the necessary preparation, and such motion been overruled, a different question would have been presented. But we are constrained, under the law, to rule that the trial judge committed no error in his ruling on the motion to postpone the trial.

2. Another ground of the motion for a new trial complains that "the court erred in not investigating the charge made by movant at the beginning of his trial against J. R. Cooper, who was then representing the State, the charge being, in open court, that the said J. R. Cooper had been employed by movant to represent him, and he agreed to do so, and which movant would have been able to have shown to the court, . . and says that the court erred in refusing to hear the evidence and pass upon the qualification of Mr. Cooper, under the law, to represent the State in said case, he being an attorney at law." This ground of the motion is qualified by Judge Felton to the following effect: After, objection to the appearance of Mr. Cooper for the State, and the offer by counsel for the accused to show that he had been employed to represent the defendant, and the denial on the part of Mr. Cooper, the trial proceeded. The jury was empanelled, the witnesses sworn and sep-

arated. Subsequently, before the examination of the witnesses had been concluded, counsel for the defendant, who submitted the objection to the appearance of Mr. Cooper, arose in open court and made the following statement: "Before we go any further in this proceedings, in justice to myself and in justice to Mr. Cooper, I wish to make a statement in reference to the motion that was made to disbar and disqualify him from taking part in this proceedings. I, at the time, believed that I was acting for the best interest of my client. Since that time, certain facts have been brought to my mind that materially changes the phase of the case, that is, as to Mr. Cooper's participation in it. I do not care nor do I seek to heap an injustice on any one, especially when it comes to one professionally; and therefore I wish to make this public statement and withdraw the motion. I wish to absolve Mr. Cooper from any and all suggestions in this matter." Under this ground of the motion the inquiry is not presented to us whether Mr. Cooper should have been allowed by the court to participate in the trial of the case as associate counsel for the State. The complaint is that the court erred in refusing to investigate, on the motion of the accused, the question whether Mr. Cooper should or should not have been so allowed. Whether he should have been or not would have depended upon the facts to be brought out in such investigation, and we confine ourselves to the question made. Necessarily so, because we have no means of knowing what would have been the proof offered on that subject had the investigation been made. It is a well-settled principle that an attorney who has been employed by one party and had communication with his client in reference to his case can not afterwards appear on the side of the opposite party in the case. Public policy forbids it; good morals and justice forbid it. We are of the opinion that, when the motion was made, the trial judge should have heard the evidence which either party desired to submit on the question, in a regular way, and then have determined the question under the evidence submitted. But his failure to do so, under the circumstances recited in his explanatory note, was not error; for subsequently in the progress of the case counsel for the accused in open court made a statement to the effect that in submitting the motion he was acting upon information which was not correct, and formally withdrew the motion. It must therefore be considered as not having been made; for the

withdrawal, in legal effect, precludes any further consideration of the merits of the motion, notwithstanding it had been denied before withdrawal.    Certainly, after withdrawal, which occurred before the case had proceeded to any great extent, it could not be contended that there was any objection to the further participation by Mr. Cooper in the trial of the case.

Nor is this view affected by the affidavit of counsel who made and withdrew this motion, submitted at the hearing of the motion for a new trial, to the effect that such statement and withdrawal were without the authority and consent of his client, and that the statement was made to keep the jury from being prejudiced against defendant, and that, at the time of making it, he did not know the facts as he knew them when he made the affidavit.    It was his business to know the facts, or not to make the statement.    In any event the withdrawal of the motion became an incident and a part of the trial.    He was the representative of the accused; the statement and withdrawal were made in the presence of the accused; and it was therefore his statement and his withdrawal.    If we should take into consideration, on a motion for a new trial after conviction, the statement that such withdrawal was made without authority or consent of his client; that the counsel making it was not informed of the true facts at the time; that it was made to prevent prejudice against the accused, the consequence would be that no statement or motion submitted by counsel in the trial of a case would be binding on an accused, although present, until after he had been personally consulted and had ratified it, and would impute to juries a readiness to violate their solemn obligations to render a verdict according to the evidence. "When one puts his case in the hands of an attorney for suit, it is a reasonable presumption that the authority he intends to confer upon the attorney includes such action as the latter, in his superior knowledge of the law, may decide to be legal, proper, and necessary in the prosecution of the demand; and consequently whatever adverse proceedings may be taken by the attorney are to be considered, so far as they affect the defendant in the suit, as approved by the client in advance, and therefore as his act, even though they prove to be unwarranted by the law." 2 Herman on Estoppel and Res Judicata, § 814.    There is neither reason nor precedent for the proposition that when in a legal proceeding a mo-

tion has been submitted to the court and subsequently withdrawn as formally as it was made, the question raised by the motion can be afterwards considered, unless the motion shall have been subsequently renewed. It is urged, however; that a renewal of the motion was made, because, in his statement occurring at the conclusion of the evidence for the defendant, the accused reiterated the fact that he had employed Mr. Cooper. Certainly the prisoner's statement is not in any sense a motion, nor does it invoke any ruling from the presiding judge. It is not evidence, but it is in the nature of evidence— that is to say, the jury may believe what he says in relation to the case, if they believe it to be true. It serves this purpose and no other. More than that, it was irrelevant matter injected into the statement.

3. Complaint is made that the court erred in not charging the law of voluntary and involuntary manslaughter. We have carefully examined, not only the brief of evidence in this case, but the evidence of every witness, and are of the opinion that no phase of the evidence could characterize the homicide as manslaughter, either voluntary or involuntary, or presented to the jury any ground for returning a verdict for either of these offenses. If the theory of the State which is supported by the evidence is true, the homicide must be graded as murder. If the evidence introduced by the defendant should be accepted as true, then the finding could only be that the accused killed the deceased to prevent the commission of a felony on his person. In that event he would be justifiable in the commission of the homicide. Certainly there was evidence of anger, and possibly of passion, on the part of the accused preceding the shooting; but it nowhere appears, nor can it be legitimately inferred, that the shooting was the result of passion justly aroused. There was no error on the part of the judge in failing to charge the law of manslaughter.

4. It is complained in the 6th ground of the motion that the court erred in giving in charge to the jury the following part of the Penal Code, § 73: " If a person kill another in his defense, it must appear that the danger was so urgent and pressing at the time of the killing, that, in order to save his own life, the killing of the other was absolutely necessary ; and it must appear, also, that the person killed was the assailant." In a note referring to this ground of the motion, the trial judge states that this charge was given on

the written request of the accused, made at the proper time and in the proper way. From this it appears that plaintiff in error is now complaining that the court erred in charging the jury a proposition which he himself, prior to the verdict, requested him to give in charge as law applicable to the case. We are free to say that the proposition, standing alone, is not the law and ought not to have been given to the jury, either with or without a request; but the question presented is whether, when the accused has, as a part of his case, in writing requested the trial judge to instruct the jury certain propositions as the law governing his case, and in compliance with that request the judge gives in charge the propositions so submitted, the accused can afterwards be heard in an assignment of error that the giving of the law as requested was error on the part of the judge. Mr. Herman in the same volume of his work above quoted, § 835, tersely expresses a principle of law which prevails universally, and which is founded upon clear principles of right and justice. He says : " *Consensus tollit errorem* is a maxim of the common law, and the dictate of common sense. The consent which cures error in legal proceedings may be implied as well as expressed." The point which we are now considering was expressly decided by the Supreme Court of New York in the case of Slattery *v.* People, 1 Hun, 311, which was a " writ of error to review the conviction of the plaintiff in error at the court of general sessions, upon an indictment for an assault with intent to kill. Before the case was submitted to the jury the prisoner's counsel requested the court to charge that he could not be convicted, under the indictment, for an assault with a sharp, dangerous weapon, with intent to do bodily harm; and the court so charged. *Held,* that the charge having been made at his request, he could not afterwards object to it, although it was clearly erroneous." In the case of Dick *v.* State, 30 Miss. 599, Chief Justice Smith, in referring to an instruction given to the jury, said, in effect, that no objection as to its legality could be heard as coming from the parties at whose instance it was given ; and in the case of State *v.* Madison, 33 Me. 267, it was even ruled that " A request by a defendant in a criminal prosecution, that the court would instruct the jury on a legal point which was relied on in the defense, precludes him from objecting to the *right* of the court to instruct the jury, though unfavorably to him, upon that point."

The doctrine involved is by no means a new one. This court has repeatedly, from time to time, recognized the same principle. In the case of *Luther* v. *Clay*, 100 *Ga.* 236, Mr. Justice Cobb, in delivering the opinion, said: "Having invoked a ruling from the court that the first foreclosure was valid, and this decision having been acquiesced in and acted upon by the party against whom it. was made, she can not be heard to attack the judgment which she obtained and of which she took the benefit, although it may have been an erroneous one;" and to further illustrate the point which he was considering and passing on, he cites the case of Davis *v.* Waklee, 156 U. S. 689, where Mr. Justice Brown said: "It may be laid down as a general proposition, that where a party assumes a certain position in a legal proceeding and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." In the case of the *American Grocery Company* v. *Kennedy*, 100 *Ga.* 462, it was ruled by this court as follows: "While the action of the trial judge in reviewing the first ruling was irregular, because of its not being within any of the exceptions taken in the motion for a new trial, yet inasmuch as the ruling was made at the request and induced by the action of the plaintiff, he can not, upon exception to the judgment overruling the motion for a new trial, be heard to urge that the court had no jurisdiction to render the judgment which he himself invoked, and of which he now seeks to complain." If it be said that these are civil cases, the reply is that the principle of the law is the same whether its application occurs in a civil or criminal case. But it has also been recognized in the case of *Ryder* v. *State*, 100 *Ga.* 528. Ryder was being tried for murder, and his defense was insanity. There was no express admission that he committed the homicide. In his instructions to the jury the judge referred to the homicide as the act which the accused committed, and the use of this language by the judge was assigned as error. In considering the point raised Mr. Justice Cobb, who delivered the opinion in that case, said: "As counsel for the accused, in numerous requests which were made to the judge to charge, used similar language, this error on the part of the judge would not have necessitated a new trial, even though the requests containing the language were not actu-

ally given by the judge. Counsel for the accused should not, in their communications with the court in requests to charge, use language which would be calculated to mislead the court as to the contentions of the accused, 'and then afterwards complain that the language used, upon being subsequently adopted by the court, was calculated to prejudice the case of the accused. Of course, if the requests containing the language had been given, there would be no question ; but it seems to us that where the requests gave to the judge language which he used in his charge, independently of the requests the language ought not to be the subject of complaint at the instance of the accused." So it must be ruled, as a matter of law, that where, in the trial of a person charged with a crime, that person through his counsel submits to the judge certain written instructions which he desires given to the jury, he can not afterwards be heard to complain that the judge gave the instructions as requested, even if such instructions were erroneous. A new trial can not, therefore, be granted on this ground of the motion.

5. The remaining grounds of the motion complain that the verdict was contrary to the evidence, against the weight of evidence, and contrary to law. We do not think so. As has been said, the evidence was conflicting. As we read and understand it, its decided weight supported the verdict which was rendered. While it was not demanded, it was fully authorized, and, being so, was in accord with the law. We have not formally considered the point that the court erred in excluding certain affidavits which were submitted at the hearing of the motion for a new trial in support of certain grounds therein set out; but the discussion of the points made, and our rulings thereon, are to the effect that even with the affidavits admitted there was no error on the part of the trial judge in overruling the motion for a new trial.

*Judgment affirmed. All the Justices concurring, except Lewis, J., absent.*