## GRIFFIN v. THE STATE.

113  279
Case 3
120  310

113   279
Case 3
128   661

1. Under the evidence the accused was guilty of murder or not guilty of any offense. The court therefore did not err in failing to charge the jury upon the law of manslaughter.

2. A conductor in charge of a railroad passenger-train who discovers a person

attempting to steal a ride thereon has a right to require such person to come into the train and pay his fare, and is not compelled to immediately stop the train and eject him therefrom. If he refuses to come into the train and makes an assault upon one of the employees on the train with a deadly weapon, the conductor and other employees upon the train, whose safety may be imperiled by such conduct, are authorized to arm themselves with such weapons as may be necessary in order to protect themselves from further assaults.

3. The charge complained did not contain any expression of opinion as to what had or had not been proved. The evidence fully warranted the verdict, and there was no error in refusing to grant a new trial.

Argued April 15, — Decided April 25, 1901.

Indictment for murder. Before Judge Bennet. Glynn superior court. February 19, 1901.

Fricie Griffin was charged with the murder of R. M. Latimer, and was found guilty. His motion for a new trial was overruled, and he excepted. The testimony showed, in brief, as follows: Latimer was the conductor of a passenger-train on which the accused was discovered by Brock, the flagman, to be stealing a ride upon the front end of the baggage-car. Brock caught hold of him and tried to pull him inside, but he jerked back. Brock asked him where he was going, and he answered that he was going to Brunswick. Brock told him to come inside where he could be seen; and Latimer told Brock to bring him in if he could. When he could not, Latimer went and talked with the accused, but what they said was not heard. Latimer then said to Brock, " Give me something, and I'll see if I can't move him." He was handed a broom, with which he tapped the accused lightly on the shoulder, and said, kindly, " Come in now, and tell me where you are going, and pay your fare." Brock reached out and seized the accused; whereupon the accused placed a pistol in Brock's face, who said to Latimer, " Look out, he's got a gun on him," and shoved Latimer back into the car. They searched the train for a pistol, without procuring one. Latimer then picked up a link, went with it to the door, and slung it toward the place where the accused had been standing. He remarked, ". I believe he has jumped off." In the meantime the accused had changed his position either to the other side of the car or to the tender of the locomotive. About half a minute after he threw the link, and while he was in full view of the accused, with his hands down and nothing in them, and making no effort to use a weapon of any character, Latimer was shot as he stood still, the shot taking effect in the abdomen and ranging downward. The train was stopped at

once, but the accused was then gone. He had previously declared his purpose to "beat" that train, and to kill the one who tried to put him off it.

The motion for a new trial complains, in addition to the general grounds, that the court failed to give in charge the law of voluntary manslaughter; but as to this ground the court certifies that, in answer to a question by the court, counsel for the defendant stated on the trial that they did not take the position that voluntary manslaughter was in the case, but contended that the defendant was absolutely justified.

It is also alleged that the court erred in the following charge: "If you find and believe from the evidence in this case that the defendant was a trespasser stealing a ride upon a passenger-train of which, it is contended, R. M. Latimer was the conductor, that a train-hand, flagman, or other employee of the train found him thereon, and in a peaceable, friendly way demanded that the defendant come inside and pay his fare, and that thereupon the defendant drew a revolver upon him with the intent and purpose manifested by his action to use it upon him, and that this employee upon that train thereupon retreated, and that Mr. Latimer went out where the defendant then was, and in a courteous manner tried to get him to come inside the train, and that the defendant still persisted in such purpose and intention to resist, if necessary, with a deadly weapon any effort upon the part of Mr. Latimer and Mr. Brock to require him to come into the train, the court charges you that they would have had the right to have required him to come into the train and pay his fare, and that they would have had the right to have armed themselves with such weapons as were necessary to protect themselves against the use of such deadly weapons upon the part of the defendant against them." The movant contends that it is not the law that the deceased and his assistants had the right, under the circumstances stated, to require the defendant to come into the train, and the further right to arm themselves with weapons for use against him; but that the court should have charged that, under the circumstances stated, the deceased and his assistants had the right to require defendant to occupy the place assigned to passengers, and to prohibit him from remaining elsewhere upon the train, and, upon his refusal to comply with such requirements, to cause the train to be stopped and the defendant to

be ejected therefrom, and in so doing to use such degree of force as should seem to a prudent man necessary to overcome any resistance that might be offered thereto by defendant. Further, that the statements contained in this charge, coupled with the naming of both Latimer and Brock, amounted to an expression of opinion upon the evidence.·

*Crovatt & Whitfield* and *Ernest Dart*, for plaintiff in error.

*J. M. Terrell, attorney-general, J. W.˙Bennett, solicitor-general,* and *W. E. Kay*, contra.

COBB, J.   1. After a careful reading of the evidence in this case we are satisfied that there was nothing proved which would have authorized the jury to find the accused guilty of the offense of manslaughter; and therefore the failure of the judge to charge the law relating to that offense was not erroneous. It is therefore unnecessary to determine whether the admission in open court by counsel for the accused, that the case as made by the evidence was one where the accused was either guilty of murder or was justifiable, would have been a sufficient reason for the judge to fail to charge the law of manslaughter, if as matter of fact the evidence would have authorized a finding that the accused was guilty of this lower grade of homicide.   In the case of *Coney* v. *State*, 90 *Ga.* 140, it was held that there was no error in not charging touching the law of manslaughter, when counsel for the prisoner admitted in open court that manslaughter was not involved and contended that the homicide, if not murder, was justifiable, and the evidence was sufficient to warrant counsel in taking this position.   This case is not authority for the position that counsel can by an admission in open court excuse the judge from charging upon the law applicable to the case.   It would seem to be the better practice for the judge to charge the law applicable to the facts of the case as he understands them, without regard to the construction placed upon the evidence by counsel for the accused.   The present case is exactly in line with the *Coney* case.   Both counsel and the judge were correct in their conclusion, that the law in relation to manslaughter had no application to the case.

2. When the conductor of a passenger-train discovers a person attempting to steal a ride upon the train without paying his fare, the conductor has a right to stop the train and require the tres-

passer to either pay his fare or leave the train, using such force as may be necessary to accomplish this purpose. But this is not the only course open to the conductor. He may require the trespasser to come into the train, without stopping the same, and thus give him an opportunity to pay his fare or explain the circumstances which apparently indicated his purpose to defraud the company. More than this, although satisfied that the person would not pay his fare, the conductor could, without stopping the train, compel him to come into the same for the purpose of investigating the matter. In such a case the conductor would have, under his powers as a police officer of the State, authority to retain the trespasser in custody and deliver him to the State authorities for a violation of the law in attempting to steal a ride on the train. See Acts 1897, p. 116; Penal Code, § 902. The conductor has a right to compel the trespasser to come into the train, in the discharge of the duty which he owes his employer to require payment of fare; he has authority under the law of the State to arrest such a person for violating a law of the State; and in cases where the trespasser is in a dangerous position, the conductor has a right, for the trespasser's own safety, to compel him to come inside of the train. Certainly such a person has no right to demand that the train be stopped immediately at a place not a regular stopping-place, in order that he may be ejected from the train instead of being required to ride thereon until a regular stopping-point is reached, at which the train can be stopped without detriment to the company's interests or to the convenience of the passengers. If a person found in such a position on the train as is above indicated refuses, upon request of the conductor or other employees in charge of the train, to come into the train, and manifests an intention to resist any effort on their part to bring him in, and to this end makes a display of a deadly weapon, the employees have a right to arm themselves in such manner as may be necessary to protect themselves from an assault by the trespasser, and enable them to force him to come into the train. The charge complained of seems to be in substantial accord with the principles above stated, and we see no error in the same.

3. It was further contended that the charge dealt with in the preceding division of the opinion was erroneous for the reason that it contained an expression of opinion as to what had been proved.

A careful reading of the charge will make it manifest that it is not subject to this criticism.

The accused relied upon the defense of alibi. The jury have seen fit to disregard the testimony of the witnesses introduced for the purpose of establishing this defense, and have preferred to believe the testimony introduced in behalf of the State, which was amply sufficient to authorize a finding that the crime was committed by the accused. Such being the case, and there being, in our opinion, no error of law, the judgment of the trial judge refusing a new trial will not be disturbed.

Judgment affirmed. All concurring, except Lewis, J., absent.